ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

RECEIPT #_____
AMOUNT $_____ /50 __
SUMMONS ISSUED____/__
LOCAL RULE 4.1_____
WAIVER FORM _____
MCF ISSUED____
BY DPTY. CLK._____
DATE: _11-29-03_

POLAROID CORPORATION,
a Delaware corporation,

    Plaintiff,

    v.

DISK FUSION TECHNOLOGIES, INC.
a California corporation,

    Defendant.

Civil Action No.:

## 03  12088 RCL

MAGISTRATE JUDGE Alexander

## COMPLAINT

Plaintiff, Polaroid Corporation ("Polaroid"), by its attorneys, for its Complaint against Defendant, Disk Fusion Technologies Corporation ("DFT"), states as follows:

## NATURE OF THE ACTION

1.    This action arises out of DFT's flagrant breach of a license agreement and the resulting infringement and dilution of one of the most famous trademarks in the world: POLAROID. The breach is causing irreparable harm to Polaroid as a result of the public being offered POLAROID branded products for sale which are not authorized. Polaroid is forced to bring this action to stop DFT from manufacturing, advertising and/or selling products wrongly bearing the POLAROID mark in breach of the former License Agreement between the two companies. Polaroid had licensed DFT to manufacture and sell various computer peripherals under the POLAROID mark. In breach of that agreement, DFT manufactured and sold, under the POLAROID mark, many products that were not submitted to Polaroid for quality approval. In addition, after proper termination

of the License Agreement due to that and other breaches, DFT continued to manufacture, advertise and/or sell the products along with the formerly approved products that were no longer approved based upon the termination.   Consequently, Polaroid seeks both preliminary and permanent injunctive relief and damages for injuries that have been, and will continue to be caused by DFT's use of the POLAROID mark, in violation of the Lanham Act (15 U.S.C. §§ 1051-1127 *et. seq.*), the Federal Trademark Dilution Act of 1995 (15 U.S.C. § 1125(c)), The Massachusetts Deceptive Trade Practices Act (Chapter 93A, Section 1 *et. seq.*) and common law unfair competition.

## JURISDICTION

2.      This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.  Polaroid's claims are, in part, based upon the violations of the Lanham Act, as amended, 15 U.S.C. §§ 1051-1127.  This action also arises out of a breach of a License Agreement wherein the parties acquiesced to the exclusive jurisdiction of this Court.  This Court has supplemental jurisdiction over the state and common law claims pursuant to 28 U.S.C. §§ 1332, 1338 and 1367.

## VENUE

3.      Venue is proper in this District because the parties agreed to The United States District Court for the District of Massachusetts as the proper and exclusive jurisdiction and venue pursuant to Paragraph 15(g) of the License Agreement upon which this Complaint is brought.  Venue is also proper pursuant to 28 U.S.C. § 1391 because, upon information and belief, DFT transacts business in the District of Massachusetts and/or a substantial part of the events and omissions giving rise to Polaroid's claims occurred in this District.

2

## PARTIES

4.     Plaintiff, Polaroid Corporation, is a Delaware corporation with its principal place of business located at 1265 Main Street, Waltham, Massachusetts 02451.

5.     Defendant, Disk Fusion Technologies Corporation, is a California corporation with its principal place of business located at 4035 Clipper Court, Fremont, California 94538. Polaroid shall amend this Complaint to add individual defendants who actively participated in and/or approved the infringement of the POLAROID mark after identities of such persons are revealed in discovery.

## COMMON FACTS

### POLAROID'S TRADEMARK

6.     Plaintiff's POLAROID mark is among the oldest and most well-known trademarks in the United States. For over 50 years, the POLAROID mark has designated and symbolized Polaroid and Polaroid's goods and services throughout the photographic and computer industries and to the general public.

7.     Long prior to the acts of DFT complained of herein, Polaroid has continuously and extensively used the POLAROID mark in connection with a broad range of imaging products and services, including photographic and digital goods and services. Polaroid's products include cameras, film, lenses, computer peripherals, digital products and parts for such products.

8.     Polaroid is the owner of the POLAROID marks and owns numerous registrations in the United States Patent and Trademark Office, each of which is in full force and effect. Most of such registrations have become incontestable under 15 U.S.C. § 1065. Among Polaroid's registrations are the following:

3

| Trademark | Registration No. | Registration Date | Goods |
|---|---|---|---|
| POLAROID | 540,179 | Mar. 27, 1951 | Light polarizing organic plastic in sheet form for further manufacture; photographic cameras, shutters, sensitized photographic films, and papers. |
| POLAROID | 607,263 | June 14, 1955 | Camera cases, apparatus for treating photographic materials; photographic copying apparatus; photographic lighting equipment and parts thereof; photosensitive elements and film units containing such elements and devices for applying protective coatings to photographic reproductions; photographic albums and picture mounts. |
| POLAROID | 689,866 | Dec. 15, 1959 | Photographic apparatus, accessories and supplies, more specifically, adhesively coated backings for photographic prints; bounce flash adapters; print copiers; projectors; slide copiers; timers and tripod adapters. |
| POLAROID | 730,072 | Apr. 17, 1962 | Batteries, film holders, slide mounts and view finders. |
| POLAROID | 1,328,262 | April 2, 1985 | Magnetic media for data storage, namely floppy flexible disks. |
| POLAROID & DESIGN | 2,374,526 | August 8, 2000 | Photographic cameras, digital and electronic cameras for taking photographs, film |

|  |  |  | recorders, computer peripherals, namely scanners, video cameras, and identification card printers, camera tripods and camera stands. |
|---|---|---|---|
| POLAROID I-ZONE | 2,567,805 | May 17, 2002 | Unexposed photographic film; photographic cameras, stickers |
| POLAROID MICROCAM | 1,832,641 | Apr. 26, 1994 | Camera for microscope. |
| POLAROID GELCAM | 2,159,501 | May 19, 1998 | Photographic cameras. |
| POLAROID 500 | 2,531,990 | Jan. 22, 2002 | Unexposed photographic film. |
| POLAROID HIGHDEFINITION | 2,295,786 | Nov. 30, 1999 | Unexposed photographic film. |
| POLAROID COLORSHOT | 2,232,868 | March 16, 1999 | Unexposed photographic film; computer printer for the printing of photographs. |
| POLAROID MACRO | 2,398,255 | October 24, 2000 | Photographic cameras. |
| POLAROID SPECTRA | 1,454,782 | Sept. 1, 1987 | Sensitized self-developing photographic film. |
| POLAROID SPECTRA | 1,454,937 | Sept. 1, 1987 | Instant picture photographic cameras. |
| POLAROID | 1,522,099 | Jan. 24, 1989 | Custom manufacture and custom design of holograms. |

Copies of print-outs from the United States Patent & Trademark Office TESS database reflecting these registrations, each of which is incontestable with the exception of Registration Numbers 2,374,526, 2,567,805, 2,159,501, 2,531,990, 2,295,786, 2,232,868, and 2,398,255, are attached as Exhibit A.

9.      Polaroid has expended substantial effort and millions of dollars over many years to promote and advertise its POLAROID trademarks for cameras and film, and other products. By virtue of such extensive and substantial advertising and the sale of photographic and digital products under the POLAROID marks, and Polaroid's maintenance of high quality standards relating thereto, the POLAROID marks have become well and favorably known as indicating Polaroid when used in connection with any photographic or digital goods or services. Such goodwill is among Polaroid's greatest corporate assets.

10.      Long prior to the acts of DFT herein alleged, as a result of the care and skill exercised by Polaroid in the manufacture and sale of its products, the supervision and control exercised by Polaroid over the nature and quality of goods sold under Polaroid's registered marks, and the extensive sale and public acceptance thereof, Polaroid's goods have acquired an outstanding celebrity symbolizing the goodwill that Polaroid has created throughout the United States and the world by selling products of dependable quality and by fairly and honorably dealing with the trade and public in the sale of these products.

11.      To maintain and enhance the goodwill developed over the past 50 years, Polaroid has stringent requirements for the manufacture and sale of products under the

6

POLAROID mark, and polices the quality maintained by licensees vigilantly to protect its goodwill with the consuming public.

12. Polaroid has sold and continues to sell many millions of dollars worth of its products and services under the POLAROID mark.

13. Polaroid has actively and vigilantly protected its POLAROID marks through the careful maintenance of its registrations and vigilant policing against infringing conduct. As a result, over the years, Polaroid has enhanced and strengthened its exclusive rights to its POLAROID marks.

14. As a result of Polaroid's long and extensive use of POLAROID, and the fact that POLAROID is a "fanciful" or "invented" trademark, POLAROID is one of the most famous trademarks in the world, having achieved consumer recognition and association with Polaroid.

## THE LICENSE AGREEMENT

15. On December 1, 2002, Polaroid entered into License Agreement A-17,019 ("License Agreement") with DFT for the licensing of the POLAROID mark to DFT for commercial purposes. A copy of the License Agreement is attached as Exhibit B. The License Agreement terminated all other contractual obligations between the parties and remained as the sole recitation of the parties' relationship.

16. The License Agreement granted DFT the right to utilize Polaroid's licensed trademarks and domain names for the purposes of selling certain specified products, listed in Schedule B to the License Agreement.

17.     Under Paragraph 3 of the License Agreement, DFT was required to submit copies of invoices evidencing DFT's minimum expenditure on advertising and promotion at the end of each calendar quarter.

18.     Under Paragraph 5 of the License Agreement, all products proposed for sale by DFT must be approved by Polaroid to ensure the quality of products containing the POLAROID mark.  If DFT offers products for sale containing the POLAROID mark which contain a material departure from the approved sample, Polaroid, may terminate the License Agreement if the breach is not cured within twenty (20) days.  In addition, if DFT displays such products containing the POLAROID mark on the licensed domain name (i.e. the web site www.polaroidmemory.com), DFT must cure the breach within seventy-two (72) hours.  Sales of products never submitted for approval but containing the POLAROID mark constitute an incurable breach of the License Agreement.

19.     Also under Paragraph 5 of the License Agreement, DFT is responsible for all customer service, repairs and warranty claims for the products listed as Licensed Articles under the License Agreement.  All products sold under the License Agreement must state: "(i) that the Licensed Articles are sold under license from Polaroid; (ii) that Polaroid does not manufacture the product; (iii) that Polaroid does not provide any warranty or support for the Licensed Articles and (iv) will list a Customer Service telephone number, email address, or Internet URL for Licensee's customer service center."

20.     Under Paragraph 12 of the License Agreement, DFT was required to provide Polaroid with a written development and marketing plan, including projections of

sales and proposed marketing efforts by February 1, 2003.  In addition, DFT was required to provide Polaroid a written annual progress report by March 1, 2003.

## COUNT I

### (Breach of Contract)

21.    The parties signed the License Agreement on December 1, 2002.  Since that time, DFT has breached the License Agreement in numerous ways.

22.    Polaroid performed all of its duties and responsibilities under the License Agreement.

23.    DFT violated Paragraph 3 of the License Agreement by failing to submit the required invoices at the end of every quarter.

24.    DFT violated Paragraph 5 of the License Agreement offering non-approved products containing the POLAROID mark on the Licensed Domain Name website located at <polaroidmemory.com>.  These products include, but are not limited to:

    a.    All Smart Media products

    b.    BurnMax 52X

    c.    Flashdrives:  USB 2.0 16mb; USB 2.0 64mb; USB 2.0 128mb; USB 2.0 256mb; USB 2.0 512mb; USB 2.0 1gb

    d.    6:1 Card Reader

    e.    DVD Media

    f.    USB 2.0 Pocket Sized Hard Drive

25. Since the termination of DFT's link to <polaroidmemory.com>, DFT continued to sell these and other infringing products on its website, <www.diskfusiontech.com>.

26. DFT violated Paragraph 5 of the License Agreement by failing to properly manage customer service and warranty disputes. Polaroid was contacted by the Better Business Bureau regarding a complaint a consumer had with a product manufactured and sold by DFT, but believed by the consumer to be from Polaroid.

27. DFT violated Paragraph 12 of the License Agreement by failing to provide Polaroid with a written development and marketing plan, including projections of sales and proposed marketing efforts by February 1, 2003 and by failing to provide Polaroid a written annual progress report by March 1, 2003.

28. DFT violated the License Agreement by using the POLAROID mark in unauthorized ways, including the "from" line of emails and in the recorded answering machine message for DFT's customer service center.

29. After discovery of these massive and continuous breaches, Polaroid notified DFT in a detailed and specific letter dated August 4, 2003. DFT's actions constituted an incurable breach of the License Agreement, because product had already been offered for sale on the website. Nevertheless, pursuant to Paragraph 5(b) of the License Agreement, DFT was provided with 72 hours to provide Polaroid with proof of the cure of those breaches. However, DFT failed to provide such proof, and indeed, DFT continued those breaches until agreeing to temporarily halt such activities on October 23, 2003.

30.    Polaroid has demanded that DFT cease use of the POLAROID mark, and cease its breach of the License Agreement, but DFT failed and refused to do so until at least October 23, 2003.

31.    DFT's use of the POLAROID mark and continued breach of the License Agreement has greatly and irreparably damaged Polaroid and will continue to so damage Polaroid unless restrained by this Court. Such breach has caused substantial damage to Polaroid in the confusion to the public and loss of goodwill as well as monetary damages from lost business.

## COUNT II

### (Trademark Infringement)

32.    Polaroid repeats and incorporates herein by reference each of the allegations of paragraphs 1-31, inclusive.

32.    DFT's use in commerce of the POLAROID mark infringes Polaroid's POLAROID marks in violation of 15 U.S.C. § 1114(1) and under the common law.

## COUNT III

### (False Designation of Origin)

33.    Polaroid repeats and incorporates herein by reference each of the allegations of paragraphs 1-31, inclusive.

34.    DFT's use in commerce of POLAROID in the sale and production of merchandise bearing this mark falsely designates the origin of DFT's merchandise, has already caused, and is likely to further cause confusion, or to cause mistake, or to deceive

11

(a) as to the affiliation, connection, or association of DFT with Polaroid, and (b) as to the origin, sponsorship, or approval of DFT's merchandise by Polaroid, in violation of Section 43(c)(1) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

## COUNT IV

### (Unfair Competition)

35.    Polaroid repeats and incorporates herein by reference each of the allegations of paragraphs 1-31, inclusive.

36.    DFT's use of POLAROID constitutes unfair competition with Polaroid under the common law in that:

      (a)      such use enables DFT to obtain the benefit of, and trade on, the goodwill of Polaroid;

      (b)      such use damages Polaroid's goodwill and Polaroid has no control over the business of DFT; and

      (c)      such use is likely to cause confusion, mistake or deception and result in the unjust enrichment of DFT.

## COUNT V

### (Violation of the Massachusetts Deceptive Trade Practices Act)

37.    Polaroid repeats and incorporates herein by reference each of the allegations of paragraphs 1-31, inclusive.

38.    DFT's use of POLAROID makes a false representation as to the source, sponsorship or approval of its goods, in violation of the Massachusetts Deceptive Trade Practices Act, Chapter 93A, Section 1 *et. seq.*

39.     Additionally, DFT's use of POLAROID causes a likelihood of confusion as to affiliation, connection or association with Polaroid in violation of the Massachusetts Deceptive Trade Practices Act, Chapter 93A, Section 1 *et. seq.*

## COUNT VI

### (Dilution)

40.     Polaroid repeats and incorporates herein by reference each of the allegations of paragraphs 1-31, inclusive.

41.     The POLAROID mark is world-renowned. It is a famous mark that is widely recognized by consumers, businesses, and industry, and that identifies the products and services of Polaroid in the mind of consumers. DFT's unauthorized use of the POLAROID mark began after Polaroid's mark had become famous.

42.     DFT's use of POLAROID blurs, diminishes and dilutes the distinctiveness of Polaroid's famous POLAROID mark which consumers, businesses and industry now associate with Polaroid and Polaroid's products and services.

43.     DFT's unauthorized use of the POLAROID mark has caused a dilution of Polaroid's famous POLAROID mark to Polaroid's detriment.

44.     DFT's unauthorized use of the POLAROID mark will continue to have an adverse effect upon the value and distinctive quality of the POLAROID mark. The use of the POLAROID mark blurs and whittles away at the distinctiveness and identity-evoking quality of the POLAROID mark.

13

45. DFT's acts tend to dilute the value of Polaroid's goodwill in connection with the POLAROID mark and to destroy the exclusive association between Polaroid and its POLAROID mark.

46. DFT's acts constitute trademark dilution in violation of 15 U.S.C. § 1125(c).

47. The intentional nature of DFT's aforementioned acts makes this an exceptional case pursuant to 15 U.S.C. § 1125(c)(2) and 15 U.S.C. § 1117(a).

48. The aforementioned acts of trademark dilution have caused, and are causing irreparable injury to Polaroid. Unless enjoined by the Court, DFT will continue to dilute the value of the POLAROID mark, causing further irreparable injury to Polaroid for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Polaroid Corporation, requests that this Court enter judgment:

1. Permanently and preliminarily enjoining Defendant, DFT, its agents, servants, employees, officers, attorneys, successors and assigns, all subsidiaries and related companies or entities and all others in active concert or participation with them from:

(a) manufacturing, distributing, selling, offering for sale, holding for sale or advertising or promoting any merchandise or services bearing the mark POLAROID or any mark confusingly similar to any of the POLAROID trademarks;

14

(b)     representing or implying in any manner that any article of merchandise or service, distributed, sold, held for sale or advertised by it is associated with, sponsored by, approved of, or in any way legitimately connected with, Polaroid Corporation;

(c)     engaging in any unfair trade practices or unfair competition against Polaroid Corporation;

(d)     aiding, abetting, encouraging or inducing another to do any of the acts herein enjoined.

2.     Requiring DFT to deliver to Polaroid for destruction any and all stationary, circulars, catalogs, charts, price lists, brochures, advertising logo types, plates, mats, labels, packages, signs and other merchandise or material in its possession or under its control or bearing the trademark or designation POLAROID or any other colorable imitation of plaintiff's POLAROID marks.

3.     Requiring DFT as trustee ex maleficio to account for and pay over to Polaroid, all profits derived by DFT from its acts of trademark infringement, unfair competition and false designation of origin, and to reimburse Polaroid for all damages suffered by Polaroid by reason of DFT's trademark infringement, unfair competition and false designation of origin and that such damages be trebled pursuant to Section 35 of the Lanham Act (15 U.S.C. § 1117).

4.     Directing Defendant DFT to pay to Polaroid Corporation, the costs of this action including its reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

5.     Such other and further relief as the Court may deem appropriate.

15

Dated:  October 29, 2003         Respectfully submitted,

Lawrence R. Robins (BBO# 632610)
Christopher S. Schultz (BBO# 630814)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER
55 Cambridge Parkway
Cambridge, MA 02142
Telephone: (617) 452-1600
Facsimile:  (617) 452-1666

Attorneys for Plaintiff
POLAROID CORPORATION

Of Counsel:
Floyd A. Mandell
Bradley S. Rochlen
KATTEN MUCHIN ZAVIS ROSENMAN
525 West Monroe Street, Suite 1600
Chicago, IL 60661-3693
Telephone:  (312) 902-5200